IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:16-cv-03162-RM-STV

JOAN OBESLO,
STEVE MIGOTTI,
VALERIE MIGOTTI,
JAMES DIMAGGIO,
ANNE HALL,
CAROL A. REYNON-LONGORIA,
CYNTHIA BERNAL,
TINA GORRELL-DEYERLE,
on behalf of GREAT-WEST FUNDS, INC.,

       Plaintiffs,

v.

GREAT-WEST LIFE AND ANNUITY INSURANCE COMPANY, and
GREAT-WEST CAPITAL MANAGEMENT, LLC,

       Defendants.

---

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)

## **TABLE OF CONTENTS**

**Page(s)**

CERTIFICATION OF CONFERRAL PURSUANT TO LOCAL RULE 7.1 ............................ 1

FACTUAL BACKGROUND .................................................................................................. 3

     A.     The Parties and the Funds .................................................................................. 3

     B.     Mutual Funds and the Investment Company Act of 1940 .................................... 4

ARGUMENT .......................................................................................................................... 6

I.      PLAINTIFFS LACK STANDING ................................................................................ 6

     A.     Plaintiffs Lack Standing to Bring Claims on Behalf of the Many Funds in Which They Do Not Own Shares ....................................................................... 7

     B.     Even for Funds that Plaintiffs Do Own, Plaintiffs Lack Standing to Bring Claims on Behalf of Funds as to Which Plaintiffs Do Not Pay an Administrative Fee ........................................................................................... 11

II.     THE COMPLAINT DOES NOT ADEQUATELY ALLEGE THAT EACH OF THE FUNDS PAID EXCESSIVE FEES .................................................................... 13

III.    DISMISSAL OF PLAINTIFFS' CLAIMS ON NON-OWNED FUNDS WITH PREJUDICE IS APPROPRIATE ................................................................................ 14

CONCLUSION ...................................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allen Oil & Gas, LLC v. Klish*,
  113 F. App'x 869 (10th Cir. 2004)..................................................................15

*Allen v. Wright*,
  468 U.S. 737 (1984)..........................................................................................8

*In re AllianceBernstein Mutual Fund Excessive Fee Litigation*,
  No. 04 Civ. 4885(SWK), 2005 WL 2677753 (S.D.N.Y. Oct. 19, 2005)..........8, 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................13

*In re Bank of Boston Corp. Securities Litigation*,
  762 F. Supp. 1525 (D. Mass. 1991) ..................................................................6

*Batra v. Investors Research Corp.*,
  No. 89-0528-CV-W-6, 1992 WL 278688 (W.D. Mo. Oct. 4, 1991)...............10, 11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................13

*Burks v. Lasker*,
  441 U.S. 471 (1979)..........................................................................................5

*Carrillo v. Suthers*,
  No. 12-cv-02034-RM-MEH, 2014 WL 11297187 (D. Colo. Dec. 29, 2014) .......15

*Curran v. Principal Management Corp., LLC*,
  No. 4:09-cv-00433 RP-CFB, 2011 WL 223872 (S.D. Iowa Jan. 24, 2011) ......9, 10

*In re Eaton Vance Corp. Securities Litigation*,
  219 F.R.D. 38 (D. Mass. 2003).........................................................................8

*Forsythe v. Sun Life Financial, Inc.*,
  417 F. Supp. 2d 100 (D. Mass. 2006).......................................................6, 8, 10

*FW/PBS, Inc. v. City of Dallas*,
  493 U.S. 215 (1990)..........................................................................................8

*Gartenberg v. Merrill Lynch Asset Management*,
    694 F.2d 923 (2d Cir. 1982) ...............................................................................6

*Griggs v. Jornayvaz*,
    No. 09-cv-00629-PAB-KMT, 2010 WL 4932674 (D. Colo. Nov. 29, 2010) .......................12

*Jones v. Harris Associates L.P.*,
    559 U.S. 335 (2010) ................................................................................ 1, 4, 5, 6

*Kansas Penn Gaming, LLC v. Collins*,
    656 F.3d 1210 (10th Cir. 2011) ........................................................................13

*Kasilag v. Hartford Investment Financial Services, LLC*,
    No. 11-1083 (RMB/KMW), 2012 WL 6568409 (D.N.J. Dec. 17, 2012)............................13

*Kasilag v. Hartford Investment Financial Services, LLC*,
    Nos. 11-1083 (RMB/KMW), 14-1611 (RMB/KMW), 2016 WL 1394347
    (D.N.J. Apr. 7, 2016) .....................................................................................8

*Krinsk v. Fund Asset Management, Inc.*,
    875 F.2d 404 (2d Cir. 1989) ............................................................................6

*In re Mutual Funds Investment Litigation*,
    519 F. Supp. 2d 580 (D. Md. 2007) ...............................................................9, 10

*Noble Asset Management v. Allos Therapeutics, Inc.*,
    No. CIVA-04CV-1030-RPM, 2005 WL 4161977 (D. Colo. Oct. 20, 2005) .......................12

*People to End Homelessness, Inc. v. Develco Singles Apartments Associates*,
    339 F.3d 1 (1st Cir. 2003) ...............................................................................7

*Raines v. Byrd*,
    521 U.S. 811 (1997)......................................................................................7

*Robbins v. Oklahoma*,
    519 F.3d 1242 (10th Cir. 2008) ......................................................................14

*Santomenno ex rel. John Hancock Trust v. John Hancock Life Insurance Co.*
    *(U.S.A.)*, 677 F.3d 178 (3d Cir. 2012) ...............................................................8

*In re Scudder Mutual Funds Fee Litigation*,
    No. 04 Civ. 1921(DAB), 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007) ...........................11

*Seni v. Peterschmidt*,
    No. 12-cv-00320-REB-CBS, 2013 WL 1191265 (D. Colo. Mar. 22, 2013) .......................14

*Siemers v. Wells Fargo & Co.*,
   No. 05-cv-04518 WHA, 2006 WL 2355411 (N.D. Cal. Aug. 14, 2006) ...............................8

*Siemers v. Wells Fargo & Co.*,
   No. C 05-04518 WHA, 2006 WL 3041090 (N.D. Cal. Oct. 24, 2016) .......................... 10, 11

*Stegall v. Ladner*,
   394 F. Supp. 2d 358 (D. Mass. 2005) .......................................................................... 10, 11

*Tellabs, Inc. v Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..........................................................................................................4

*Toone v. Wells Fargo Bank, N.A.*,
   716 F.3d 516 (10th Cir. 2013) .........................................................................................13

*Turner ex rel. Davis New York Venture Fund v. Davis Selected Advisers, LP*,
   626 F. App'x 713 (9th Cir. 2015) ....................................................................................12

*Warth v. Seldin*,
   422 U.S. 490 (1975)...........................................................................................................6

*Williams v. Bank One Corp.*,
   No. 03 C 8561, 2003 WL 22964376 (N.D. Ill. Dec. 15, 2003) ...........................................10

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Great-West Life and Annuity Insurance Company ("GWL&A") and Great-West Capital Management, LLC ("GWCM") move to dismiss Plaintiffs' Complaint in its entirety. In support of their motion, Defendants state as follows:

## CERTIFICATION OF CONFERRAL PURSUANT TO LOCAL RULE 7.1

Pursuant to Local Rule 7.1, the undersigned certifies that they have conferred with opposing counsel in a good faith effort to resolve the issues raised herein. Specifically, counsel sent Plaintiffs a letter with detailed notice of the deficiencies in the Complaint. *See* Ex. A, Letter to Michael Wolff from Sean Murphy, Feb. 22, 2017. The parties had also met and conferred about substantially similar deficiencies in Plaintiffs' complaints in the related action, *Obeslo v. Great-West Capital Management, LLC*, 1:16-CV-00230-CMA-MJW (D. Colo.), which Defendant GWCM has moved to consolidate with this Action. The issues could not be resolved despite good faith efforts, as Plaintiffs have chosen to stand on the Complaint.

## INTRODUCTION

This is the second action this same group of Plaintiffs, represented by the same counsel, has brought derivatively on behalf of the same group of mutual funds, alleging Defendants have charged "excessive" fees in violation of Section 36(b) of the Investment Company Act of 1940 ("ICA"). That statute provides a limited remedy for a plaintiff who can meet the difficult burden of showing that the fund's adviser charged a fee that "is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." *Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 351 (2010) (adopting standard in *Gartenberg v. Merrill Lynch Asset Mgmt.*, 694 F.2d 923, 928-29 (2d Cir. 1982)). After

challenging the investment advisory fees paid to GWCM in the related case, *Obeslo v. Great-West Capital Management, LLC*, 1:16-CV-00230-CMA-MJW (D. Colo.) ("*Obeslo* I"), Plaintiffs bring this Action against Defendants GWL&A and GWCM to recoup allegedly excessive administrative fees paid to GWL&A for administrative and recordkeeping services performed for more than 60 different mutual funds in the Great-West, Funds, Inc. complex (the "Great-West Funds" or the "Funds") (GWCM has moved to consolidate these cases, which motion remains pending). Plaintiffs' Complaint in this case is deficient and subject to dismissal. The Complaint should be dismissed for two reasons.

*First*, Plaintiffs lack standing. While Plaintiffs purport to bring this Action derivatively on behalf of all of the more than 60 Great-West Funds, Plaintiffs do not allege that they own all of those Funds and do not own many of those Funds. Section 36(b)'s express terms require Plaintiffs to be "security holders" of each Fund on whose behalf they bring a claim, and the "case and controversy" requirement of Article III of the United States Constitution requires Plaintiffs to have a personal stake in the litigation. Here, Plaintiffs are not security holders of Great-West Funds they do not own. Plaintiffs do not pay any fees in connection with those non-owned Funds. And Plaintiffs would not benefit from any recovery by those Funds in this Action. Courts have routinely dismissed Section 36(b) claims under Rule 12(b)(6) for lack of statutory and constitutional standing in these exact circumstances. Similarly, even for the limited number of Funds that Plaintiffs do own, Plaintiffs fail to allege that they own share classes that actually pay the administrative fee alleged to be excessive. Not every share class of each Great-West Fund pays an administrative fee, and Plaintiffs therefore lack standing to sue on behalf of any Fund of which they own a share class that does not pay that fee.

*Second*, Plaintiffs have not pled sufficient facts to state a claim under Section 36(b).  The Complaint purports to allege a claim on behalf of "approximately 63 Funds[,]" but never alleges which Funds Plaintiffs actually own and never even makes reference to any individual Great-West Fund anywhere in the Complaint.  Plaintiffs instead resort to "group pleading," making sweeping allegations that apply generally to the Great-West Funds, Inc. complex but are not specific to the Funds that Plaintiffs actually own.  This is insufficient to state a claim for relief.

## FACTUAL BACKGROUND

### A.        The Parties and the Funds

Plaintiffs purport to bring this Action on behalf of "approximately 63" different Great-West Funds.  Compl. ¶¶ 1, 12-19.  Each of the Great-West Funds is a "series" within a broader investment company known as Great-West Funds, Inc., a registered investment company under the ICA.  Compl. ¶ 3.  Each of the Great-West Funds is overseen by a board of directors, all but one of whom are independent of GWCM (the "Board").  Compl. ¶ 5.

GWCM, a registered investment adviser under the ICA, acts as investment adviser to the Great-West Funds pursuant to an Investment Advisory Agreement dated May 1, 2015.  Compl. ¶ 11.  GWCM is a wholly owned subsidiary of GWL&A, Compl. ¶ 9, which performs administrative and recordkeeping services for the Great-West Funds pursuant to an Administrative Services Agreement dated May 1, 2015.  Compl. ¶ 26.  Under the Administrative Services Agreement, GWL&A contracts to perform the following services for the Great-West Funds:

1.     Plan Records:  GWL&A shall maintain a record of the number of Fund shares held by each account holder.

2.      Participant Records:  GWL&A will perform sub-accounting to record participant interests in a retirement plan.

3.      Shareholder Services:  GWL&A shall investigate inquiries from authorized plan representatives and other account holders.

4.      Recordation of the Issuance of Shares:  GWL&A shall record the ownership interest of account holders for shares and maintain a record of the total number of shares that are issued to account holders.

5.      Maintenance of Records:  GWL&A will notify Great-West Funds if discrepancies arise between records GWL&A maintains for account holders and the information Great-West Funds provides to GWL&A.

Ex. B, Administrative Services Agreement, May 1, 2015, at 3.[1]  For its services, GWL&A collects a fee from each of the Great-West Funds of .35% of each Fund's assets under management contained in G, G1, Initial, L, T, and T1 share classes.  *Id.* at 9; Compl. ¶ 26.  Prior to May 1, 2015, GWL&A contracted with GWCM for the performance of administrative and recordkeeping services, and GWL&A received from GWCM the same fee of .35% of each Fund's assets under management.  Compl. ¶ 23.

**B.      Mutual Funds and the Investment Company Act of 1940**

"A mutual fund is a pool of assets, consisting primarily of [a] portfolio [of] securities, and belonging to the individual investors holding shares in the fund."  *Jones*, 559 U.S. at 338 (alterations in original) (quoting *Burks v. Lasker*, 441 U.S. 471, 480 (1979)).  The management and operations of a mutual fund are typically externalized and contractually delegated to its investment adviser.  Since the enactment of the ICA, courts have recognized the legal separation of a mutual fund and its adviser and have acknowledged this distinction as a principal purpose of

---

[1] On Rule 12(b)(6) motions, courts may consider "documents incorporated into the complaint by reference[.]"  *See Tellabs, Inc. v Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

the ICA, which protects fund investors by maintaining a fund's independence from its adviser. *See* 15 U.S.C. §§ 80a-10(a)-(b), 80a-15(a)-(e); *Burks*, 441 U.S. at 480-85. The ICA creates a regulatory structure designed to safeguard the interests of fund shareholders. The statute entrusts "noninterested" directors or trustees sitting on a mutual fund's board (the "independent directors") with the primary responsibility of protecting fund shareholders from any conflicts of interest with the fund's adviser. A majority of independent directors, who represent the "cornerstone" of the ICA's efforts to check conflicts of interest, *Jones*, 559 U.S. at 339, must approve annually the compensation paid to the adviser. 15 U.S.C. § 80a-15(c); *accord Jones*, 559 U.S. at 340. To fulfill that obligation, the directors must "request and evaluate" all information from the adviser reasonably necessary to evaluate the terms of the advisory contract with the funds. *See* 15 U.S.C. § 80a-15(c).

The ICA's reliance on independent directors to manage potential conflicts of interest between a fund and its adviser is a central tenet of Section 36(b), which provides that an adviser owes a "fiduciary duty with respect to the receipt of compensation" from a mutual fund to the adviser or any affiliate of the adviser. 15 U.S.C. § 80a-35(b). The United States Supreme Court has made clear that to prove a breach of this duty, the plaintiff must meet the high burden of showing that the fee charged is "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." *Jones*, 559 U.S. at 345-46. In making that inquiry, a court must consider—and give appropriate deference to—the role of the independent directors in approving that fee: "[A]pproval by the board of directors of such investment company of such compensation or payments . . . shall be given such consideration by the court as is deemed appropriate under all

the circumstances." 15 U.S.C. 80a-35(b)(2).  The statute does not oblige the directors to

negotiate the "'best deal' possible." *Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 409 (2d

Cir. 1989).  Nor does it authorize the court to sit as a "super-trustee" or to second-guess informed

board decisions.  *See Jones*, 559 U.S. at 352.  "[T]he court is not authorized 'to substitute its

business judgment for that of a mutual fund's board of directors in the area of management

fees[.]'"  *Gartenberg*, 694 F.2d at 928 (quoting S. Rep. No. 91-184 (1970); H.R. Rep. No. 91-

1382 (1970)).

## **ARGUMENT**

### I.     **PLAINTIFFS LACK STANDING**

"Standing is a threshold inquiry and is particularly important in securities litigation,

where strict application of standing principles is needed to avoid vexatious litigation and abusive

discovery." *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 118-19 (D. Mass. 2006) (citing

*Warth v. Seldin*, 422 U.S. 490, 498 (1975); *In re Bank of Bos. Corp. Sec. Litig.*, 762 F. Supp.

1525, 1531 (D. Mass. 1991)).  In their Complaint, Plaintiffs purport to bring suit on behalf of all

of the more than 60 different Great-West Funds.  Yet Plaintiffs do not purport to own shares of

each of those Funds and in fact do not own shares of many of them.[2]  Plaintiffs do not even

---

[2] All but two of the Plaintiffs in this Action are the same plaintiffs in *Obeslo* I, which alleges that
GWCM charges excessive advisory fees to each of the Great-West Funds.  Plaintiffs in *Obeslo* I
alleged that they own *only 17* of the Funds within Great-West Funds, Inc. First Am. Compl. at
4-7, *Obeslo* I, ECF No. 26.  GWCM moved to dismiss the complaint in that case for lack of
standing and failure to state a claim.  Def.'s Mot. to Dismiss First Am. Compl., *Obeslo* I, ECF
No. 35.  On February 22, 2017, Magistrate Judge Watanabe issued a report and recommendation
to grant Plaintiffs leave to amend their complaint and add the two additional plaintiffs that are
included in the Complaint in the present Action.  *See* Report & Recommendation on Def.'s Mot.
to Dismiss First Am. Compl. and Pls.' Mot. for Leave to File Sec. Am. Compl., *Obeslo* I, ECF
No. 176.  The Magistrate also recommended denying GWCM's motion to dismiss on the basis
that it is directed at a superceded pleading.  *Id.* at 8.  Plaintiffs' proposed amended complaint in

allege in the Complaint which of the Funds they own, merely stating that each of the named

Plaintiffs are "a shareholder of Great-West Funds[.]" *See* Compl. ¶¶ 12-19. The law is clear that

Plaintiffs do not have standing to pursue claims on behalf of the Funds they do not own. And

even for the limited number of Funds they do own, Plaintiffs have not alleged that they own

share classes that actually pay the administrative fee at issue here. Plaintiffs thus cannot meet

their burden to establish standing.

> **A.    Plaintiffs Lack Standing to Bring Claims on Behalf of the Many Funds in Which They Do Not Own Shares**

Under Section 36(b), private plaintiffs may sue only on behalf of the funds whose shares

they own: "[a]n action may be brought under this subsection by the Commission, or by a

*security holder* of such registered investment company [(i.e., mutual fund)] on behalf of such

company." 15 U.S.C. § 80a-35(b) (emphasis added). Aside from this statutory standing

requirement, Article III, Section 2 of the United States Constitution requires a party to have

standing. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "Article III standing 'imposes three fairly

strict requirements.'" *People to End Homelessness, Inc. v. Develco Singles Apartments Assocs.*,

339 F.3d 1, 8 (1st Cir. 2003) (quoting *Munoz-Mendoza v. Pierce*, 711 F.2d 421, 424 (1st Cir.

1983)). These requirements include (1) a personal injury suffered by the plaintiff "that is [(2)]

fairly traceable to the defendant's allegedly unlawful conduct and [(3)] likely to be redressed by

---

*Obeslo* I shows that Plaintiffs collectively own a fraction of the more than 60 Funds in the Great-West Funds family. *See* Ex. 2 to Pls.' Mot. for Leave to File Sec. Am. Compl., *Obeslo* I, ECF No. 120. GWCM intends to file a motion to dismiss the proposed amended complaint in *Obeslo* I once it is filed, including on the same standing grounds set forth here. GWCM's motion to consolidate *Obeslo* I with this Action remains pending. Def.'s Mot. to Consolidate, *Obeslo* I, ECF No. 131.

the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). The burden is on Plaintiffs to meet these requirements. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

Courts have consistently held that both the "security holder" language in Section 36(b) and Article III require that a plaintiff currently own shares in those funds on whose behalf the claim is brought. *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 677 F.3d 178, 185 (3d Cir. 2012) (affirming dismissal of Section 36(b) claim where plaintiff sold shares in the fund); *Kasilag v. Hartford Inv. Fin. Servs., LLC*, Nos. 11-1083 (RMB/KMW), 14-1611 (RMB/KMW), 2016 WL 1394347, at *9 (D.N.J. Apr. 7, 2016) ("Ownership is a requirement for Section 36(b) actions." (citation omitted)); *Siemers v. Wells Fargo & Co.*, No. 05-cv-04518 WHA, 2006 WL 2355411, at *20-21 (N.D. Cal. Aug. 14, 2006) (plaintiff lacked standing under Section 36(b) because he failed to allege that he owned shares of at-issue funds); *Forsythe*, 417 F. Supp. 2d at 119-20 (dismissing Section 36(b) claims on behalf of funds in which plaintiffs did not hold shares); *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04 Civ. 4885(SWK), 2005 WL 2677753, at *9 (S.D.N.Y. Oct. 19, 2005) ("The named Plaintiffs do not have standing to sue on behalf of forty-eight AllianceBernstein mutual funds in which they do not own shares."), *partial reconsideration of*, 2006 WL 74439 (S.D.N.Y. 2006); *In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38, 41 (D. Mass. 2003) (same).

Here, Plaintiffs have no financial stake in litigation concerning administrative fees charged to the Great-West Funds they do not own. Plaintiffs are not "security holders" in those Funds, they do not pay fees associated with those Funds, and they would not benefit from any

recovery with respect to those Funds. Thus, Plaintiffs lack standing to pursue claims on behalf of those non-owned Funds.[3]

That each Great-West Fund is a "series" in Great-West Funds, Inc., which itself is an investment company registered under the ICA, Compl. ¶ 3, does not alter the standing analysis. For example, in *In re Mutual Funds Investment Litigation*, 519 F. Supp. 2d 580 (D. Md. 2007), the plaintiff brought Section 36(b) claims on behalf of a group of mutual funds, each of which was a "series" within a single broader investment company. *Id.* at 588. The court noted the SEC's position that "each series is to be treated as a separate investment company"[4] and cited cases holding that the broader corporate structure of a series trust does not confer standing on plaintiffs to pursue claims on behalf of non-owned funds. *Id.* at 588-89. The court held:

> Plaintiffs cannot overcome the fact that the text of Section 36(b) (expressly requiring that a plaintiff be a "security holder of" the entity on whose behalf he

---

[3] Plaintiffs also cannot use ownership of asset allocation funds, or "fund-of-funds," to challenge the fees paid by the underlying funds within those funds. *See Curran v. Principal Mgmt. Corp., LLC*, No. 4:09-cv-00433 RP-CFB, 2011 WL 223872, at *4 (S.D. Iowa Jan. 24, 2011) (holding plaintiffs lack standing to pursue Section 36(b) claims challenging fees charged to underlying funds within a fund-of-funds).

[4] *In re Mut. Funds Inv. Litig.*, 519 F. Supp. 2d at 588 & n.11 (citing *Adoption of Rule 18f-2*, 1972 SEC LEXIS 1497, 1972 WL 125428, at *1 (Aug. 8, 1972) ("[T]he individual series of [a registered investment company] are, for all practical purposes, separate investment companies. Each series of stock represents a different group of stockholders with an interest in a segregated portfolio of securities."); *Salomon Bros. Inc.*, SEC No-Action Letter, 1995 WL 329631, at *2 (May 26, 1995) ("[O]n a number of occasions, [SEC staff] has treated individual portfolios of a single registered investment company as separate investment companies under other provisions of the 1940 Act that expressly apply to a 'registered investment company.'"); *Mutual Series Fund, Inc.*, SEC No-Action Letter, 1995 WL 693304, at *2 (Nov. 7, 1995) (the SEC has "recognized that a series is the functional equivalent of a separate investment company and have concluded that an individual series should be deemed a separate investment company in applying the various limitations and restrictions imposed by the 1940 Act and the rules under the 1940 Act"); *Principal Investors Fund Inc.*, SEC No-Action Letter, 2005 WL 1160193, at *3 (May 13, 2005) ("[E]ach series of a series investment company is a separate investment company for the purposes" of Section 12 of the ICA)).

> seeks to bring suit), SEC pronouncements, and well-reasoned case law provide overwhelming support for treating an individual mutual fund as a "registered investment company." Accordingly, derivative plaintiffs may not assert claims under Section 36(b) on behalf of mutual funds in which they never held shares.

*Id.* at 590.

Numerous courts have similarly held that a plaintiff lacks standing to sue on behalf of "series" funds within a broader single investment company unless they own shares in each of the specific funds. *Curran v. Principal Mgmt. Corp., LLC*, No. 4:09-cv-00433 RP-CFB, 2011 WL 223872, at *2 n.3 (S.D. Iowa Jan. 24, 2011) (each "series" fund treated as a registered investment company, even though one trust was registered with the SEC); *Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2006 WL 3041090, at *7 (N.D. Cal. Oct. 24, 2006) ("Plaintiff cannot sue on behalf of funds he does not own." (footnote omitted)); *Forsythe*, 417 F. Supp. 2d at 118 (each fund should be treated as a "separate and distinct entity" under Section 36(b); "a plaintiff may not use the corporate structure of the broader investment company to confer standing" (citations omitted)); *Stegall v. Ladner*, 394 F. Supp. 2d 358, 363 (D. Mass. 2005) (holding plaintiff's interest in fund "does not permit him to bootstrap claims arising out of investment decisions made in relation to other funds in which he was not a participant"); *Williams v. Bank One Corp.*, No. 03 C 8561, 2003 WL 22964376, at *1 (N.D. Ill. Dec. 15, 2003) (no standing to bring a derivative claim on behalf of unincorporated funds within incorporated business trust).[5]

---

[5] In *Batra v. Investors Research Corp.*, No. 89-0528-CV-W-6, 1992 WL 278688 (W.D. Mo. Oct. 4, 1991), plaintiffs were permitted to pursue claims on behalf of "series" funds in which they did not own shares. *Id.* at *1. The case, decided 25 years ago, is no longer good law in light of more recent decisions that have declined to follow *Batra* and relied on subsequent SEC guidance to hold that plaintiffs only have standing on behalf of the series they actually own. *See Siemers*, 2006 WL 3041090, at *7 n.2 ("After considering the weight of recent authority and relevant SEC rulings, . . . this [court] respectfully disagrees with the *Batra* decision."); *In re Mut. Funds Inv. Litig.*, 519 F. Supp. 2d at 589 n.12 (declining to follow *Batra* and noting it failed to consider that

Finally, granting Plaintiffs standing to bring suit on behalf of non-owned funds would be inconsistent with the narrow remedy provided under Section 36(b). *See Stegall*, 394 F. Supp. 2d at 377 (Section 36(b) "was intended to provide a very specific, narrow federal remedy . . . ." (citation omitted)). Such an expansive grant of standing would permit a shareholder with assets invested in a single mutual fund within a complex registered as an investment company to challenge the fees charged to numerous other funds that may have decidedly different investment objectives, assets under management, and other characteristics, even though the investor did not pay fees for those funds and could not recover any excessive compensation from them. This absurd result could not have been the intent of Section 36(b), as it would subject investment advisers to enormous additional liability simply by virtue of deciding to register funds as series trusts rather than as multiple investment companies.

Accordingly, Plaintiffs lack standing to challenge the administrative fees paid by the Great-West Funds Plaintiffs do not actually own.

**B.      Even for Funds that Plaintiffs Do Own, Plaintiffs Lack Standing to Bring Claims on Behalf of Funds as to Which Plaintiffs Do Not Pay an Administrative Fee**

While Plaintiffs do appear to own shares of a limited number of the Great-West Funds, *see supra* n.2, Plaintiffs still do not necessarily have standing to bring a claim on behalf of all of

---

plaintiff did not satisfy "security holder" requirement). *Batra* is also distinguishable in that it involved a fee that was assessed at the investment company level as an aggregate of the investment company's assets, rather than at the individual series level as the fees are here. *Batra*, 1992 WL 278688, at *3 & n.6; Ex. B, Administrative Services Agreement, May 1, 2015, at 9. Numerous courts have distinguished *Batra* on this ground. *See In re Scudder Mut. Funds Fee Litig.*, No. 04 Civ.1921(DAB), 2007 WL 2325862, at *10 (S.D.N.Y. Aug. 14, 2007); *Siemers*, 2006 WL 3041090, at *7 n.2; *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, 2005 WL 2677753, at *10.

those Funds.  This is because Plaintiffs have not alleged that, with regard to any Funds they actually own, they own shares classes of those Funds that actually pay the administrative fee that is the subject of the Complaint.  This omission is significant:  investors can purchase any of a number of share classes of each Fund, *including an institutional share class that does not pay an administrative fee*. *See* Ex. C, Excerpt of Great-West Funds, Inc. Statement of Additional Information, April 29, 2016, at 94 (identifying share classes offered by the Great-West Funds, including institutional share class); Ex. D, Great-West S&P 500® Index Fund Prospectus, April 29, 2016 (showing that institutional class pays "0.00%" in administrative services fees); Ex. B, Administrative Services Agreement, May 1, 2015, at 9 (showing that GWL&A is paid an administrative services fee on G, G1, Initial, L, T, and T1 class shares); *see also Griggs v. Jornayvaz*, No. 09-cv-00629-PAB-KMT, 2010 WL 4932674, at *3 (D. Colo. Nov. 29, 2010) (on a motion to dismiss, courts can consider public disclosure documents required by law to be, and that have been, filed with the SEC); *Noble Asset Mgmt. v. Allos Therapeutics, Inc.*, No. CIVA-04CV-1030-RPM, 2005 WL 4161977, at *2 (D. Colo. Oct. 20, 2005) (taking judicial notice of the defendant company's Form 10-K Annual Report that was filed with the SEC while considering defendant's motion to dismiss).[6]

Plaintiffs therefore fail to allege they would benefit from any recovery and thus cannot establish statutory or Article III standing.  The courts have made clear that a plaintiff lacks standing to bring a Section 36(b) claim where the plaintiff does not own a share class that actually pays the fee being challenged.  *See Turner ex rel. Davis N.Y. Venture Fund v. Davis*

---

[6] Upon information and belief, Defendants understand that multiple Plaintiffs own the institutional share class of the Funds on whose behalf they purport to sue and therefore do not pay an administrative fee in connection with those Funds.

*Selected Advisers, LP*, 626 F. App'x 713, 718 (9th Cir. 2015) (dismissing Section 36(b) claim where plaintiff did not own share class that paid distribution fee, and thus "regardless of whether the distribution fee is excessive, Turner has not suffered an injury from it, and he therefore lacks standing to challenge it" (citations omitted)); *Kasilag v. Hartford Inv. Fin. Servs., LLC*, No. 11-1083 (RMB/KMW), 2012 WL 6568409, at *9 (D.N.J. Dec. 17, 2012) (dismissing Section 36(b) claim challenging fees charged to share classes plaintiffs did not own where "the record is factually barren with respect to standing").

Accordingly, Plaintiffs lack standing to challenge the administrative fees paid by the Great-West Funds for which they own share classes that do not pay such fees.

## II.   THE COMPLAINT DOES NOT ADEQUATELY ALLEGE THAT EACH OF THE FUNDS PAID EXCESSIVE FEES

Separate and apart from their lack of standing, Plaintiffs fail to adequately state a claim. To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 520-21 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1212-13 (10th Cir. 2011) (dismissing lawsuit for failure to state a claim for relief under the standard in *Twombly* and *Iqbal*). A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[C]onclusory statements" are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678-79.

The Complaint does not allege sufficient factual matter to state a claim under Section 36(b). Plaintiffs fail to allege which of the more than 60 Great-West Funds they actually own.

Plaintiffs fail to allege that they own share classes that actually pay an administrative fee. And indeed, Plaintiffs *do not even state the name of a single one of the Great-West Funds* in the Complaint. If Defendants prevail in their standing argument, and if this case is not consolidated with *Obeslo* I, it would be impossible to tell from the Complaint which of the Great-West Funds are appropriately at issue in this case.

Plaintiffs have thus taken an inappropriate "group pleading" approach, making sweeping and generalized allegations that the administrative fees charged to an entire complex of more than 60 Great-West Funds are excessive. The failure to make specific and individualized allegations regarding the Funds Plaintiffs own is fatal to their claim and renders the Complaint defective. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) ("[T]he complaint must meet the minimal standard of notice pleading as articulated by the Court in *Twombly*. . . . Without allegations sufficient to make clear the 'grounds' on which the plaintiff is entitled to relief, it would be impossible for the Court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established." (citation omitted)); *Seni v. Peterschmidt*, No. 12-cv-00320-REB-CBS, 2013 WL 1191265, at *3 (D. Colo. Mar. 22, 2013) (dismissing derivative action due to plaintiffs' reliance on group pleading). As Plaintiffs have not stated with particularity a claim that *any* individual Great-West Fund owned by Plaintiffs charges excessive administrative fees, or that Plaintiffs actually pay administrative fees on those Funds, dismissal of the Complaint is appropriate.

## III.   DISMISSAL OF PLAINTIFFS' CLAIMS ON NON-OWNED FUNDS WITH PREJUDICE IS APPROPRIATE

Defendants provided Plaintiffs with notice that their Complaint is deficient on the grounds that they do not have standing with respect to the Great-West Funds they do not own.

Plaintiffs also previously received notice of this same deficiency in *Obeslo* I. Def.'s Mot. to Dismiss First Am. Compl., *Obeslo* I, ECF No. 35. As Plaintiffs have not cured, and are unable to cure, this deficiency, dismissal of Plaintiffs' claims as to the Great-West Funds they do not own should be with prejudice. *See Allen Oil & Gas, LLC v. Klish*, 113 F. App'x 869, 871-72 (10th Cir. 2004); *Carrillo v. Suthers*, No. 12-cv-02034-RM-MEH, 2014 WL 11297187, at *18 (D. Colo. Dec. 29, 2014), *adopting report and recommendation as modified*, 2015 WL 396475 (D. Colo. July 20, 2015).

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court dismiss the Complaint in its entirety.

Dated: February 27, 2017

Respectfully submitted,

*/s Sean M. Murphy*

Sean M. Murphy
Milbank, Tweed, Hadley & McCloy, LLP
28 Liberty Street
New York, NY 10005
Telephone: 212.530.5688
Facsimile: 212.822.5688
smurphy@milbank.com

Robert J. Liubicic
Milbank, Tweed, Hadley & McCloy, LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: 424.386.4525
Facsimile: 213.629.5063
rliubicic@milbank.com

Edward C. Stewart (#23834)
Wheeler Trigg O'Donnell, LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Telephone: 303.244.1800
Facsimile: 303.244.1879
stewart@wtotrial.com

Robert Michael Little
Great-West Life & Annuity Insurance Company
8515 East Orchard Road, 2T3
Greenwood Village, CO 80111
Telephone: 303.737.5089
Facsimile: 303.737.1699
bob.little@greatwest.com

*Attorneys for Defendants, Great-West Life and
Annuity Insurance Company and Great-West
Capital Management, LLC*

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on February 27, 2017, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

- **Stephen M. Hoeplinger**
  shoeplinger@uselaws.com
- **Robert J. Liubicic**
  rliubicic@milbank.com
- **Sean Miles Murphy**
  smurphy@milbank.com
- **Jerome Joseph Schlichter**
  jschlichter@uselaws.com
- **Michael Armin Wolff**
  mwolff@uselaws.com

/s Sean M. Murphy
Sean M. Murphy
Milbank, Tweed, Hadley & McCloy, LLP
28 Liberty Street
New York, NY 10005
Telephone: 212.530.5688
Facsimile: 212.822.5688
smurphy@milbank.com

*Attorney for Defendants, Great-West Life and Annuity Insurance Company and Great-West Capital Management, LLC*